# AFFIDAVIT OF SPECIAL AGENT TERRENCE DUPONT

I, Terrence Dupont, being duly sworn, depose and state as follows:

1. I have been a Special Agent with the Federal Bureau of Investigation ("FBI") since 2012. I am currently assigned to the Economic Crimes squad with the FBI's Boston Division. Before this assignment, I spent approximately six and a half years on FBI Public Corruption and Health Care Fraud squads. I have participated in investigations of various federal crimes, including mail and wire fraud, money laundering, honest services fraud, aggravated identity theft, and immigration document fraud, among others. These investigations have used various investigative techniques, including but not limited to, search warrants, Title III wiretaps, and consensual recordings. These investigations have led to the arrest, prosecution, and conviction of numerous individuals.

2. I submit this affidavit in support of the government's application for a material witness arrest warrant for Priscila Barbosa under 18 U.S.C. § 3144.[1]

3. The facts in this affidavit come from my involvement in both the investigation that resulted in Barbosa's present incarceration and an investigation into operators of an "agency" that (i) arranged hundreds of sham marriages between foreign nationals and United States citizens—marriages entered into for the primary purpose of circumventing immigration laws—and (ii) submitted fraudulent petitions to United States Citizenship and Immigration Services ("USCIS")

---

[1] Title 18, United States Code, Section 3144 provides: "If it appears from an affidavit filed by a party that the testimony of a person is material in a criminal proceeding, and if it is shown that it may become impracticable to secure the presence of the person by subpoena, a judicial officer may order the arrest of the person and treat the person in accordance with the provisions of section 3142 of this title. No material witness may be detained because of inability to comply with any condition of release if the testimony of such witness can adequately be secured by deposition, and if further detention is not necessary to prevent a failure of justice. Release of a material witness may be delayed for a reasonable period of time until the deposition of the witness can be taken pursuant to the Federal Rules of Criminal Procedure."

seeking to adjust the immigration status of the foreign nationals based on those sham marriages. This latter investigation culminated in an indictment in the District of Massachusetts charging eleven defendants with conspiracy to commit marriage fraud and immigration document fraud in violation of 18 U.S.C. § 371.  *United States v. Marcialito Benitez, et al.*, Case No. 22-cr-10077-DJC.  Trial in that case is scheduled to begin on Monday, November 27, 2023, with respect to the remaining defendant, Engilbert Ulan.

4. Barbosa is a Brazilian national who resided in Massachusetts.  On May 7, 2021, Barbosa was arrested in connection with her involvement with a scheme to create driver accounts with rideshare and delivery companies using stolen personal identifiers (*e.g.*, Social Security numbers) and to sell or rent those fraudulent accounts to individuals who were not eligible to drive for those companies.

5. Following her arrest, investigators interviewed Barbosa twice pursuant to a proffer letter agreement with the government.  During her proffers with the government, Barbosa described how she obtained a green card through a sham marriage arranged by an individual named Mars (subsequently identified through public records as Marcialito Benitez) and Mars's associates.

6. Barbosa told investigators that a friend from California referred her to Mars, who maintained an office on Wilshire Boulevard in Los Angeles.  Barbosa flew from Massachusetts to California in May 2020 to meet with Mars at his "agency."  The agency's office had three rooms, including a waiting room, Mars's office, and an office for one or more other employees.  Mars quoted Barbosa a total cost of $30,000 for a sham marriage and assistance with obtaining her green card.

7. Barbosa told investigators that, the following day, she returned to Mars's office and met with her prospective husband and a "broker" named Tamia (subsequently identified as co-

defendant Tamia Duckett through phone records), who brought the prospective husband to Mars's office.  Barbosa gave Mars an envelope with $5,000 in cash.  Mars gave Barbosa a document that scheduled monthly payments of $350 that she would make to the husband.

8.      According to Barbosa, the day after that, she met Mars at a park and gave him $15,000 in cash.  Mars then had a reverend perform a sham marriage ceremony between Barbosa and the husband in the park.  Also present for the ceremony were Tamia and an individual named Harold (subsequently identified as co-defendant Harold Poquito through bank records), who was the receptionist in Mars's office and who took photographs of the ceremony.  Mars and Harold then completed the paperwork for her marriage and her green card application.

9.      Barbosa told investigators that she paid another of Mars's assistants, named Engilbert (subsequently identified as Engilbert Ulan through bank records), to list his residential address (345 S Manhattan Place Apartment 306, Los Angeles, California) as her own on all immigration paperwork, to make it appear that Barbosa resided in the Los Angeles area.  Barbosa paid Engilbert $100 each month to use his address.

10.     According to Barbosa, Mars and his assistants coached Barbosa and her husband on creating the appearance of being legitimately married.  Barbosa opened a joint bank account with her husband at Wells Fargo and registered a car in California in both her and her husband's names.  Harold helped Barbosa purchase a life insurance policy in her husband's name.  Barbosa and her husband filed taxes together.  Barbosa traveled to California again three weeks before her scheduled immigration interview to prepare for the interview with her husband.  After her immigration interview, Mars assisted Barbosa by preparing signed affidavits from individuals who claimed to know that Barbosa and her husband were legitimately married.

11. In connection with the investigation into fraudulent rideshare and delivery account activity, investigators obtained, through a court-authorized search warrant, the iCloud account belonging to Barbosa. Barbosa's iCloud account contained back-ups of messages dating until the end of 2020 between Barbosa and each of Mars, Barbosa's sham husband, Harold, and Engilbert (nicknamed "Angel"). The messages with Mars include exchanges in which Mars directed Barbosa to meet him at his office and at a chapel by the park at specified times, as well as attachments of photographs of official documents including a marriage certificate for Barbosa and her sham husband. In one message, sent May 29, 2020, Mars told Barbosa, "This is the contact info of the owner of your address his name is Angel -2134556276 or 4155836992 angel." On the same day, Barbosa received a message from the number 4155836992 that stated, "Good Day…. You can Zelle it here Engilbert U. Ulan Wellsfargo 4155836992. … This is Mars friend, the address that you'll be using." Barbosa's bank statements reflect that, beginning on approximately May 28, 2020, Barbosa made monthly payments of $100 to Engilbert Ulan through Zelle. In August 2020, Ulan messaged Barbosa to notify her that she had received a notice in the mail that the immigration authorities needed to take her fingerprints. On October 29, 2020, Mars sent Barbosa an image of a Social Security card for her that had arrived by mail to Ulan's address.

12. In connection with Barbosa's arrest on May 7, 2021, investigators executed a court-issued search warrant at Barbosa's residence. Investigators recovered additional messages from Barbosa's phone from 2021 that demonstrated Barbosa's continued correspondence with Mars and associates in connection with her green card application. For example, on March 10, 2021, Mars messaged Barbosa, "tomorrow come to office at 1030am ok, and look for Atty Angel Ulan for the documents review and checklist. Please bring all your papers."

13.     From Barbosa's residence, investigators also recovered a binder containing Barbosa's immigration documents during the search.  The binder contained Barbosa's green card application and various supporting documents, including the affidavits described by Barbosa and a joint tax return for Barbosa and her sham husband that listed Ulan's address as their place of residence.  Investigators also recovered an album containing photographs from the marriage ceremony and a document with the title "Package Plan," matching Barbosa's description of the payment schedule that Mars gave her.  Below are a sample photograph and the "Package Plan" document:





14. Barbosa signed a cooperation agreement with the government on February 17, 2022 (attached as Exhibit 1).

15. Based on the foregoing and on my training, experience, and knowledge of the facts of this investigation, I respectfully submit that Barbosa's testimony is material to the trial of Engilbert Ulan on November 27, 2023, including to authenticate and testify regarding communications in furtherance of the marriage fraud scheme that she had with Engilbert Ulan and others.

16.     On April 11, 2022, Barbosa pleaded guilty to one count of conspiracy to commit wire fraud and one count of aggravated identity theft. On June 23, 2023, Senior United States District Judge Mark L. Wolf sentenced Barbosa to a term of imprisonment of 36 months.

17.     Barbosa is presently confined at FCI Aliceville in Aliceville, Alabama. According to the Federal Bureau of Prisons (BOP), she is scheduled to be released as early as November 16, 2023.

18.     On October 27, 2023, the government served a trial subpoena on Barbosa, through FCI Aliceville, for Barbosa to testify at the November 27, 2023 trial. On October 31, 2023, United States District Judge Denise J. Casper issued a writ of habeas corpus ad testificandum, commanding the relevant BOP officials and the United States Marshal for the District of Massachusetts to produce Barbosa in the District of Massachusetts on November 13, 2023 to prepare for her trial testimony.

19.     The government has been advised by immigration officials that removal proceedings against Barbosa are pending and that U.S. Immigration and Customs Enforcement (ICE) lodged a detainer on Barbosa on August 23, 2023 (attached as Exhibit 2). The ICE detainer on Barbosa requests that any law enforcement agency with custody of Barbosa notify ICE before releasing Barbosa from custody.

20.     If, upon the completion of her sentence on November 16, 2023, Barbosa is released to ICE custody pursuant to the detainer, a trial subpoena may not be sufficient to keep Barbosa in the United States or secure her appearance at trial. I am aware that, if a removal order is issued before Barbosa is released from BOP custody, that removal order would supersede a subpoena to testify at trial. I am also aware that immigration authorities have not consistently taken custody of BOP releasees subject to detainers. There is accordingly risk, in the absence of a material witness

warrant, that Barbosa will be released from BOP custody and either removed from the United States or released with notice to appear for removal proceedings at a later date. In either case, Barbosa is unlikely to be available to testify at trial.

21. Based on the foregoing, I respectfully submit that it is impracticable to secure Barbosa's trial testimony by subpoena alone. Accordingly, I believe that a material witness arrest warrant should be issued by the Court so that Barbosa can be arrested and either detained or released in accordance with the provisions of 18 U.S.C. § 3142 until her testimony at the November 27, 2023 trial has been completed. Additionally, whereas trial is scheduled to begin on November 27, 2023, shortly after Barbosa's release date, it is reasonable under the circumstances for a material witness arrest warrant to be issued to secure Barbosa's presence and her testimony at trial, which the government expects will be completed during that week.

Respectfully submitted,

_____
TERRENCE DUPONT
SPECIAL AGENT
FEDERAL BUREAU OF INVESTIGATION

Sworn to by telephone in accordance with Fed. R. Crim. P. 4.1 on November ___, 2023   **Nov 1, 2023**

_____
HON. JUDITH G. DEIN
UNITED STATES MAGISTRATE JUDGE

8

# EXHIBIT 1



**U.S. Department of Justice**

*Nathaniel R. Mendell*
*Acting United States Attorney*
*District of Massachusetts*

---

*Main Reception: (617) 748-3100*                           *John Joseph Moakley United States Courthouse*
*1 Courthouse Way*
*Suite 9200*
*Boston, Massachusetts 02210*

February 8, 2022

William R. Sullivan, Jr.
Sullivan & Sullivan
25 Railroad Square, Suite 405
Haverhill, MA 01832
attywrs@aol.com

      Re:    United States v. Aguiar, et al.
               Criminal No. 1:21-cr-10158-MLW
               Cooperation Agreement

Dear Mr. Sullivan:

      This letter sets forth the understanding between the United States Attorney for the District of Massachusetts ("the U.S. Attorney") and your client, Priscila Barbosa ("Defendant"), concerning Defendant's cooperation with the U.S. Attorney in the above-referenced case. This Cooperation Agreement supplements, but does not supersede, the Plea Agreement between the parties dated February 8, 2022 ("Plea Agreement"). Defendant and the U.S. Attorney further understand and agree that the original of this Cooperation Agreement shall be maintained by the U.S. Attorney, but may be later disclosed pursuant to the U.S. Attorney's discovery obligations, or submitted to the District Court under seal, with notice to Defendant. In addition, Defendant and the U.S. Attorney understand and agree that the U.S. Attorney will submit this Cooperation Agreement to the U.S. Probation Office for its use in preparing the Presentence Report. Nothing in this Cooperation Agreement affects the U.S. Attorney's obligation to provide the Court and the U.S. Probation Office with accurate and complete information regarding this case.

      The Cooperation Agreement is as follows:

      1.      <u>Terms of Cooperation</u>

      Defendant agrees to cooperate fully with law enforcement agents and government attorneys. Defendant must provide complete and truthful information to all law enforcement personnel. If Defendant's testimony is requested, Defendant must testify truthfully and completely

before any grand jury, and at any hearing and trial. Defendant must answer all questions posed by any law enforcement agents and government attorneys and must not withhold any information. Defendant must not attempt to protect any person or entity through false information or omission, or to implicate falsely any person or entity. Upon request, Defendant must furnish all documents, objects and other evidence in Defendant's possession, custody or control that are relevant to the government's inquiries.

Defendant understands that she has a right to have counsel present when communicating with representatives of the government about the criminal conduct with which Defendant has been charged. To facilitate Defendant's cooperation, Defendant hereby knowingly and voluntarily waives this right with respect to all debriefings by law enforcement agents and government attorneys and all appearances to testify. Defendant or Defendant's counsel may revoke this waiver with a specific request at any time without otherwise affecting the terms or enforceability of this Cooperation Agreement.

To ensure that the Court has all relevant sentencing information, Defendant waives any rights to prompt sentencing and will join in any requests by the U.S. Attorney that sentencing be postponed until Defendant's cooperation is complete. Defendant understands that the date of Defendant's sentencing is within the sole discretion of the Court and that this Cooperation Agreement may require Defendant's cooperation to continue even after Defendant has been sentenced. Defendant's failure to continue to cooperate pursuant to the terms of this Cooperation Agreement after sentence is imposed shall constitute a breach of this Cooperation Agreement by Defendant.

2. Substantial Assistance Motion

Should Defendant provide substantial assistance in the investigation or prosecution of another person who has committed a criminal offense, the U.S. Attorney agrees that, at or before sentencing, the U.S. Attorney will take one or more of the following steps, at the U.S. Attorney's discretion: (1) file a motion under USSG § 5K1.1 to recommend that the Court impose a sentence below the advisory Guidelines sentencing range; and/or (2) file a motion under 18 U.S.C. § 3553(e) to enable the Court to impose a sentence below the statutory mandatory minimum.

The determination whether Defendant has provided substantial assistance rests solely in the discretion of the U.S. Attorney and is not subject to appeal or review. The U.S. Attorney will make this determination based on the truthfulness and value of Defendant's assistance, regardless of the outcome or result of any proceeding or trial. The U.S. Attorney reserves the right to decline to take either of steps (1) or (2) described above if Defendant violates any condition of pretrial release, violates any of the requirements of honesty and candor detailed in Paragraph 1 above, or engages in any criminal conduct after the date Defendant signs this Cooperation Agreement and/or the Plea Agreement. Defendant may not withdraw her guilty plea if the U.S. Attorney determines that Defendant has not rendered substantial assistance or otherwise declines to take either of steps (1) or (2) above for any of the reasons listed above, or if the Court refuses to grant the U.S. Attorney's motion for a downward departure.

3. <u>Sentence Recommendation with Substantial Assistance</u>

If Defendant provides substantial assistance, subject to all of the provisions of Paragraphs 1 and 2 above, the U.S. Attorney will advise the Court of the full nature, extent, and value of the assistance provided by Defendant. In such an event, the U.S. Attorney reserves the right to recommend a particular sentence or sentencing range, or to make no recommendation at Defendant's sentencing, subject to the requirements of Paragraph 2 above. In no case will the U.S. Attorney's recommendation exceed that set forth in Paragraph 4 of the Plea Agreement between the parties.

Any sentencing recommendation the U.S. Attorney may make based upon Defendant's substantial assistance is not binding upon the Court. Rather, the sentence to be imposed is within the Court's sole discretion. Should the Court decline to follow the U.S. Attorney's sentencing recommendation (if any), the U.S. Attorney reserves the right to defend the Court's sentence in any direct appeal or future challenge (collateral or otherwise).

4. <u>Letter Immunity</u>

In return for Defendant's full and truthful cooperation, the U.S. Attorney agrees not to use any information provided by Defendant pursuant to this Cooperation Agreement or pursuant to the proffer letters dated May 26, 2021 and July 20, 2021 (or any information directly or indirectly derived therefrom) against Defendant in any criminal case except in a prosecution: (1) for perjury or obstruction of justice, or for making a false statement after the date of this Cooperation Agreement or the Plea Agreement; or (2) for an act of physical violence against the person of another, or conspiracy to commit any such act of violence. The U.S. Attorney reserves the right to respond fully and accurately to all requests for information by the Court and U.S. Probation Office in this case. All such disclosures, however, shall be made subject to the constraints identified in USSG § 1B1.8(a) and its commentary on the use of this information by the Court and U.S. Probation Office. Regardless of the provisions of USSG § 1B1.8(b)(5) and its commentary, the U.S. Attorney agrees to take the position at sentencing that information provided by Defendant pursuant to this Cooperation Agreement and the Plea Agreement should not be used as a basis for the Court to refuse to depart downward.

5. <u>Breach of Cooperation Agreement</u>

If the U.S. Attorney determines that Defendant has breached this Cooperation Agreement by making any false, incomplete or misleading statement, or by providing any false, incomplete or misleading information to any law enforcement personnel, grand jury or court, the U.S. Attorney may terminate this Cooperation Agreement and/or the Plea Agreement as set forth in Paragraph 8 of the Plea Agreement; may pursue any and all of the remedies for breach set forth in Paragraph 8 of the Plea Agreement; and may prosecute Defendant for any and all offenses that could be charged against Defendant in the District of Massachusetts, including, but not limited to, false statements and perjury.

6. <u>Complete Cooperation Agreement</u>

This letter contains the complete supplemental agreement between the parties relating to Defendant's cooperation in this matter. No other promises, representations or agreements have been made other than those set forth in this Cooperation Agreement, the proffer letter dated June 9, 2021, which is superseded by this Cooperation Agreement as to any statements made after the date of this Cooperation Agreement, and the Plea Agreement. This Cooperation Agreement can be modified or supplemented only in a written document signed by the parties or on the record in court.

If this letter accurately reflects the cooperation agreement between the U.S. Attorney and Defendant, please have Defendant sign the Acknowledgment of Agreement below. Please also sign below as Witness. Return the original of this letter to Assistant U.S. Attorney David Holcomb.

Very truly yours,

RACHAEL S. ROLLINS
United States Attorney

By: _____
STEPHEN E. FRANK 2/28/02
Chief, Securities, Financial & Cyber Fraud Unit
SETH B. KOSTO
Deputy Chief, Securities, Financial & Cyber Fraud Unit

_____
DAVID M. HOLCOMB
Assistant U.S. Attorney

4

## ACKNOWLEDGMENT OF COOPERATION AGREEMENT

I have had this Cooperation Agreement read to me in my native language in its entirety and discussed it with my attorney. I hereby acknowledge that it fully sets forth my cooperation agreement with the United States Attorney's Office for the District of Massachusetts. I further state that no additional promises or representations have been made to me by any official of the United States in connection with this matter other than those set forth in the Plea Agreement dated February 8, 2022 and the proffer letter dated June 9, 2021. I understand the crimes to which I have agreed to plead guilty, the mandatory minimum and maximum penalties for those offenses, and the Sentencing Guideline penalties potentially applicable to them. I am satisfied with the legal representation provided to me by my attorney. We have had sufficient time to meet and discuss my case. We have discussed the charges against me, possible defenses I might have, the terms of this Cooperation Agreement (and the February 8, 2022 Plea Agreement), and whether I should go to trial. I am entering into this Cooperation Agreement freely, voluntarily, and knowingly.

_Priscila Barbosa_
Priscila Barbosa
Defendant

Date: 17/2/22

I certify that Priscila Barbosa has had this Cooperation Agreement read to her in her native language, and that we have discussed both its meaning and its relationship to the Plea Agreement dated February 8, 2022. I believe she understands the Cooperation Agreement and is entering into the Cooperation Agreement freely, voluntarily, and knowingly.

_William R. Sullivan, Jr._
William R. Sullivan, Jr., Esq.
Attorney for Defendant

Date: 2/18/22

5

# EXHIBIT 2

**DEPARTMENT OF HOMELAND SECURITY**
# IMMIGRATION DETAINER - NOTICE OF ACTION

| | |
|---|---|
| Subject ID: 387194509<br>Event #: ETW2308000132 | File No: 219 535 872<br>Date: August 23, 2023 |
| TO: (Name and Title of Institution - OR Any Subsequent Law Enforcement Agency) ALICEVILLE FCI<br>11070 HIGHWAY 14<br>PO BOX 445<br>ALICEVILLE, AL 354420000 | FROM: (Department of Homeland Security Office Address)<br>ERO - Etowah, AL Sub Office<br>ICE<br>ERO ETOWAH SUB OFFICE<br>827 FOREST AVE<br>GADSDEN, AL 35901 |

Name of Alien: BARBOSA, PRISCILA

Date of Birth: 12/14/1985    Citizenship: BRAZIL    Sex: F

**1. DHS HAS DETERMINED THAT PROBABLE CAUSE EXISTS THAT THE SUBJECT IS A REMOVABLE ALIEN. THIS DETERMINATION IS BASED ON** *(complete box 1 or 2).*    BOP #: 43947-509

- ☐ A final order of removal against the alien;
- ☒ The pendency of ongoing removal proceedings against the alien;
- ☐ Biometric confirmation of the alien's identity and a records check of federal databases that affirmatively indicate, by themselves or in addition to other reliable information, that the alien either lacks immigration status or notwithstanding such status is removable under U.S. immigration law; and/or
- ☒ Statements made by the alien to an immigration officer and/or other reliable evidence that affirmatively indicate the alien either lacks immigration status or notwithstanding such status is removable under U.S. immigration law.

**2. DHS TRANSFERRED THE ALIEN TO YOUR CUSTODY FOR A PROCEEDING OR INVESTIGATION** *(complete box 1 or 2).*

- ☐ Upon completion of the proceeding or investigation for which the alien was transferred to your custody, DHS intends to resume custody of the alien to complete processing and/or make an admissibility determination.

**IT IS THEREFORE REQUESTED THAT YOU:**

- **Notify DHS** as early as practicable (at least 48 hours, if possible) before the alien is released from your custody. Please notify DHS by calling ☒ U.S. Immigration and Customs Enforcement (ICE) or ☐ U.S. Customs and Border Protection (CBP) at 256-640-1795. If you cannot reach an official at the number(s) provided, please contact the Law Enforcement Support Center at: (802) 872-6020.
- **Maintain custody** of the alien for a period **NOT TO EXCEED 48 HOURS** beyond the time when he/she would otherwise have been released from your custody to allow DHS to assume custody. The alien **must be served with a copy of this form** for the detainer to take effect. This detainer arises from DHS authorities and should not impact decisions about the alien's bail, rehabilitation, parole, release, diversion, custody classification, work, quarter assignments, or other matters
- Relay this detainer to any other law enforcement agency to which you transfer custody of the alien.
- Notify this office in the event of the alien's death, hospitalization or transfer to another institution.

☐ If checked: please cancel the detainer related to this alien previously submitted to you on _____ (date).

WILLIAM STONE - Deportation Officer
_____                        _____
(Name and title of Immigration Officer)                  (Signature of Immigration Officer) (Sign in ink)

---

**Notice:** If the alien may be the victim of a crime or you want the alien to remain in the United States for a law enforcement purpose, notify the ICE Law Enforcement Support Center at (802) 872-6020. You may also call this number if you have any other questions or concerns about this matter.

**TO BE COMPLETED BY THE LAW ENFORCEMENT AGENCY CURRENTLY HOLDING THE ALIEN WHO IS THE SUBJECT OF THIS NOTICE:**

Please provide the information below, sign, and return to DHS by mailing, emailing or faxing a copy to _____.

Local Booking/Inmate #: _____    Estimated release date/time: _____

Date of latest criminal charge/conviction: _____    Last offense charged/conviction: _____

This form was served upon the alien on _____, in the following manner:

☐ in person   ☐ by inmate mail delivery   ☐ other (please specify): _____

_____                        _____
(Name and title of Officer)                              (Signature of Officer) (Sign in ink)

DHS Form I-247A (3/17)                                                               Page 1 of 3

## NOTICE TO THE DETAINEE

The Department of Homeland Security (DHS) has placed an immigration detainer on you. An immigration detainer is a notice to a law enforcement agency that DHS intends to assume custody of you (after you otherwise would be released from custody) because there is probable cause that you are subject to removal from the United States under federal immigration law.  DHS has requested that the law enforcement agency that is currently detaining you maintain custody of you for a period not to exceed 48 hours beyond the time when you would have been released based on your criminal charges or convictions. **If DHS does not take you into custody during this additional 48 hour period, you should contact your custodian** (the agency that is holding you now) to inquire about your release. **If you believe you are a United States citizen or the victim of a crime, please advise DHS by calling the ICE Law Enforcement Support Center toll free at (855) 448-6903.**

## NOTIFICACIÓN A LA PERSONA DETENIDA

El Departamento de Seguridad Nacional (DHS) le ha puesto una retención de inmigración. Una retención de inmigración es un aviso a una agencia de la ley que DHS tiene la intención de asumir la custodia de usted (después de lo contrario, usted sería puesto en libertad de la custodia) porque hay causa probable que usted está sujeto a que lo expulsen de los Estados Unidos bajo la ley de inmigración federal. DHS ha solicitado que la agencia de la ley que le tiene detenido actualmente mantenga custodia de usted por un periodo de tiempo que no exceda de 48 horas más del tiempo original que habría sido puesto en libertad en base a los cargos judiciales o a sus antecedentes penales. **Si DHS no le pone en custodia durante este periodo adicional de 48 horas, usted debe de contactarse con su custodio** (la agencia que le tiene detenido en este momento) para preguntar acerca de su liberación. **Si usted cree que es un ciudadano de los Estados Unidos o la víctima de un crimen, por favor avise al DHS llamando gratuitamente al Centro de Apoyo a la Aplicación de la Ley ICE al (855) 448-6903.**

## AVIS AU DETENU OU À LA DÉTENUE

Le Département de la Sécurité Intérieure (DHS) a placé un dépositaire d'immigration sur vous. Un dépositaire d'immigration est un avis à une agence de force de l'ordre que le DHS a l'intention de vous prendre en garde à vue (après celà vous pourrez par ailleurs être remis en liberté) parce qu'il y a une cause probable que vous soyez sujet à expulsion des États-Unis en vertu de la loi fédérale sur l'immigration. Le DHS a demandé que l'agence de force de l'ordre qui vous détient actuellement puisse vous maintenir en garde pendant une période ne devant pas dépasser 48 heures au-delà du temps après lequel vous auriez été libéré en se basant sur vos accusations criminelles ou condamnations. **Si le DHS ne vous prenne pas en garde à vue au cours de cette période supplémentaire de 48 heures, vous devez contacter votre gardien (ne)** (l'agence qui vous détient maintenant) pour vous renseigner sur votre libération. **Si vous croyez que vous êtes un citoyen ou une citoyenne des États-Unis ou une victime d'un crime, s'il vous plaît aviser le DHS en appelant gratuitement le centre d'assistance de force de l'ordre de l'ICE au (855) 448-6903**

## NOTIFICAÇÃO AO DETENTO

O Departamento de Segurança Nacional (DHS) expediu um mandado de detenção migratória contra você. Um mandado de detenção migratória é uma notificação feita à uma agência de segurança pública que o DHS tem a intenção de assumir a sua custódia (após a qual você, caso contrário, seria liberado da custódia) porque existe causa provável que você está sujeito a ser removido dos Estados Unidos de acordo com a lei federal de imigração. ODHS solicitou à agência de segurança pública onde você está atualmente detido para manter a sua guarda por um período de no máximo 48 horas além do tempo que você teria sido liberado com base nas suas acusações ou condenações criminais. **Se o DHS não leva-lo sob custódia durante este período adicional de 48 horas, você deve entrar em contato com quem tiver a sua custódia** (a agência onde você está atualmente detido) para perguntar a respeito da sua liberação. **Se você acredita ser um cidadão dos Estados Unidos ou a vítima de um crime, por favor informe ao DHS através de uma ligação gratuita ao Centro de Suporte de Segurança Pública do  Serviço de Imigração e Alfândega (ICE) pelo telefone (855) 448-6903.**

**THÔNG BÁO CHO NGƯỜI BỊ GIAM**

Bộ Nội An (DHS) đã ra lệnh giam giữ di trú đối với quý vị. Giam giữ di trú là một thông báo cho cơ quan công lực rằng Bộ Nội An sẽ đảm đương việc lưu giữ quý vị (sau khi quý vị được thả ra) bởi có lý do khả tín quý vị là đối tượng bị trục xuất khỏi Hoa Kỳ theo luật di trú liên bang. Sau khi quý vị đã thi hành đầy đủ thời gian của bản án dựa trên các tội phạm hay các kết án, thay vì được thả tự do, Bộ Nội An đã yêu cầu cơ quan công lực giữ quý vị lại thêm không quá 48 tiếng đồng hồ nữa. Nếu Bộ Nội An không đến bắt quý vị sau 48 tiếng đồng hồ phụ trội đó, quý vị cần liên lạc với cơ quan hiện đang giam giữ quý vị để tham khảo về việc trả tự do cho quý vị. Nếu quý vị là công dân Hoa Kỳ hay tin rằng mình là nạn nhân của một tội ác, xin vui lòng báo cho Bộ Nội An bằng cách gọi số điện thoại miễn phí 1(855) 448-6903 cho Trung Tâm Hỗ Trợ Cơ Quan Công Lực Di Trú.

被拘留者通知書

國土安全部(Department of Homeland Security，簡稱DHS)已經對你發出移民拘留令。移民拘留令為一給予執法機構的通知書，闡明DHS意欲獲取對你的羈押權(若非有此羈押權，你將會被釋放)；因為根據聯邦移民法例，並基於合理的原因，你將會被遞解離美國國境。DHS亦已要求現正拘留你的執法機構，在你因受到刑事檢控或定罪後，而在本應被釋放的程序下，繼續對你作出不超過四十八小時的監管。若你在這附加的四十八小時內，仍未及移交至**DHS**的監管下，你應當聯絡你的監管人(即現正監管你的機構)查詢有關你釋放的事宜。若你認為你是美國公民或為罪案受害者，請致電**ICE**執法部支援中心**(Law Enforcement Support Center)**知會**DHS**，免費電話號碼：**(855)448-6903**。